JOE D. HUGHES, INC., et al., Appellants,

v.

Thomas Donald MORAN et al., Appellees.

No. 16016.

Court of Civil Appeals of Texas.

Fort Worth.

June 5, 1959.

Rehearing Denied July 10, 1959.

Vinson, Elkins, Weems & Searls, Thomas B. Weatherly and Gaius G. Gannon, Jr., Houston, for appellant.

Miller, McClure, Lucas & Wright, Ralph K. Miller and James H. Wright, Houston, for appellee.

RENFRO, Justice.

A passenger car driven by Mrs. Moran was involved in an intersection collision with a pickup truck owned by Joe D. Hughes, Inc., and driven by Bobby Gene Malone.

The Morans sued Hughes, Inc., and Malone for damages for injuries sustained by Mrs. Moran.

The jury found Malone guilty of six acts of negligence, each of which was found to be a proximate cause of the collision.

In answer to issues 17 and 18 the jury found that Mrs. Moran failed to keep a proper lookout and such failure was a proximate cause. The answers to issues 24 and 25 found the failure of Mrs. Moran to slow the speed of her car to be a proximate cause, and issues 26, 27 and 28 found the failure of Mrs. Moran to timely apply her brakes to be negligence and proximate cause.

On motion of the plaintiffs the trial court disregarded the answers of the jury to issues 17, 18, 24, 25, 26, 27, and 28 and entered judgment for plaintiffs for $15,260, being the amount of damages awarded for the injuries to Mrs. Moran. The verdict and judgment awarded $350 to the Morans' minor child but no appeal was taken as to that award.

The defendants contend the court erred in disregarding the jury finding that Mrs. Moran failed to keep a proper lookout.

The accident occurred at the intersection of Knipp Road and Sandalwood Drive in Houston, about 10:30 a. m., on a dry, clear day. The sun was shining. Both streets are approximately 27 feet wide. Both are concrete paved. Sandalwood runs east and west; Knipp, north and south. Mrs. Moran was driving south on Knipp and defendant Malone was driving east on Sandalwood. There were no traffic controls on either street. The approach to the intersection was straight on both streets. The right front of the pickup struck the plaintiffs' passenger car in the rear right door just in front of the rear right wheel. The impact occurred in the southwest quarter of the intersection. The rear end of the passenger car was about even with the center line of Sandalwood at point of impact. The car was over 19 feet long. At the point of impact the front end of the pickup was 3 feet east of the west line of the intersection. The pickup left 15 feet of skid marks up to point of impact. No skid marks were made by the car prior to the impact. There were no obstructions to interfere with the view of either driver as they approached the intersection.

Mrs. Moran testified: She was approximately 2½ car lengths from the intersection when she first saw the pickup; at that time it was 200 to 300 feet away; she was traveling about 20 miles per hour; she could not approximate the speed of the pickup except that its speed was closer to 30 miles per hour than it was to 60; after seeing the pickup she looked to the left; there was no traffic approaching from the left; she did not see the pickup again until the front bumper of her car was about the middle of the intersection; at that time the pickup was about a car length from her car; she did not apply her brakes; she could have stopped prior to entering the intersection after she first saw the pickup, but she did not slow down and did not apply brakes; she thought she could pass through the intersection without danger.

Malone testified he and Mrs. Moran were equally distant from the intersection when he first saw her; he estimated both were 3 or 4 car lengths away from the intersection; he was going 18 or 20 miles per hour. (The jury found he was traveling in excess of 30.) At one time he testified he did not speed up, later he testified the truck started "jerking" and he shifted into second gear to pick up a little speed, but did not speed up very fast.

We must of course accept the evidence and permissible inferences there-

from most favorable to the verdict, and disregard all evidence and inferences contrary thereto. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; White v. White, 141 Tex. 328, 172 S.W.2d 295. We must also recognize it was within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365.

■ Ordinarily, proper lookout is a question for the jury. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. The appellate court must consider that evidence, if any, which viewed in its most favorable light supports the jury findings. Biggers v. Continental Bus System, Tex., 303 S.W.2d 359.

According to Mrs. Moran's own testimony she did not again look to her right after seeing defendant's truck 200 or 300 feet away, traveling, as to her, at an undetermined speed. There was no danger to her left for she looked left and saw no traffic in that direction. She gave no reason for not looking to the right again. Since there was no distraction elsewhere the jury could believe she failed to keep a proper lookout in failing to look to the right again as she approached the intersection, knowing a truck was approaching from that direction, and, of course, the jury could believe she did not look to the right at all, but first saw defendant's truck after she was in the intersection.

Plaintiffs stress that portion of Malone's testimony that he shifted gears and speeded up a little. The jury, however, could consider his testimony as a whole and conclude that his slowing up, if he did, because of a miss in the motor, and the small increase in speed due to shifting gears, counterbalanced each other and that the total time traveled by Malone from 200 to 300 feet back was the same as if he had not shifted gears. The jury could disbelieve altogether

that part of Malone's testimony about a "jerking" motor and a gear shift. Moreover, Mrs. Moran did not claim to have been misled by any sudden change in speed by Malone.

The jury could well believe that since Mrs. Moran was so uncertain about the speed of the pickup when she first saw it that she could be mistaken as to its position with reference to the intersection when she first saw it. That is a circumstance the jury could take into consideration in determining the question of proper lookout.

■ The evidence demonstrates, and the jury found, that Mrs. Moran had the right of way, but that did not excuse her from exercising ordinary care for her own safety. Although not required to anticipate negligent or unlawful conduct on the part of others, a person is not entitled to close his eyes to that which is plainly visible and which would have been observed by a person of ordinary prudence similarly situated. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95.

In Lynch v. Ricketts, Tex., 314 S.W.2d 273, 275, the court had before it a strikingly similar fact situation. In that case the Supreme Court held: "In a case of this character, standards of ordinary care such as the direction and extent of the observation which Mrs. Ricketts should have made at any particular time cannot be fixed with any degree of certainty but must be left in large measure to the trier of fact. It is well settled, moreover, that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence. * * * The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, therefore, if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same." Further, held the

court: "It was within the province of the jury, therefore, to determine whether by maintaining a proper lookout a person in Mrs. Ricketts' position could and would have seen and appreciated the danger in time to avoid the collision either by stopping or sounding a warning."

We believe the facts and circumstances established by the evidence and the inferences which can reasonably be drawn therefrom support the jury's conclusion that Mrs. Moran failed to keep a proper lookout, and such failure was a proximate cause of the collision.

In view of the entire record, we cannot say that such findings are against the overwhelming preponderance of the evidence.

Defendants also allege error on the part of the trial court in disregarding the jury findings that Mrs. Moran was negligent in failing to slow down and in failing to timely apply the brakes. The points of error must be sustained. We refer to the evidence set out in our discussion of proper lookout, and again call attention to her own testimony she had plenty of time to slow down or stop after she first saw Malone approaching. This, with all the other evidence, is sufficient to uphold the jury findings that Mrs. Moran failed to exercise due care for her own safety under the circumstances. For an excellent opinion and citation of authorities on the duties incumbent on one approaching an intersection, see Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877.

We hold that the court erred in disregarding the answers of the jury to issues 17, 18, 24, 25, 26, 27, and 28. The judgment is reversed and remanded to the trial court with instructions to render judgment for the defendants. After judgment is rendered the plaintiffs may file a motion for new trial based on jury misconduct, as requested in their second cross-point of error.

Reversed and remanded with instructions.