**ROY L. JONES, INC., Plaintiff-Appellant,**

v.

**HOME TRANSPORTATION COMPANY, Inc., Defendant-Appellee.**

**No. 27248.**

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1970.

James E. Ross, Blades, Crain, Slator, Winters & Ross, Houston, Tex., for appellant.

Tom Alexander, Jonathan Day, Houston Tex., Butler, Binion, Rice, Cook & Knapp, Houston, Tex., of counsel, for appellee.

Before GEWIN, THORNBERRY and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

This case arises from an accident involving a tractor-trailer unit composed of a tractor leased by appellant Roy L. Jones, Inc. (Jones), and a trailer owned by appellee Home Transportation, Inc. (Home). The accident occurred near Montgomery, Alabama when a portion of the trailer's gooseneck hitch collapsed dropping the trailer to the pavement. Jones compensated the shipper for damage sustained by the cargo and filed suit in the United States District Court for the Southern District of Texas seeking recovery from Home. Jones contended that Home was liable because of its negligence in inspecting the trailer and alternatively by virtue of an indemnity agreement between Jones and Home. The jury rejected both theories and judgment was entered for Home from which Jones appeals. We affirm.

Jones and Home are both common carriers holding motor vehicle certificates issued by the Interstate Commerce Commission (ICC) for adjoining interstate routes. The two companies have what is commonly called an interchange agreement whereby equipment of one of the companies, manned by its employees, may be operated over the routes of the other. Compliance with ICC regulations is accomplished by means of a spot lease from the company which owns the equipment to the company which holds ICC rights to the routes over which the equipment is operating. Under the lease the company holding ICC authority has control of the shipment and pays a percentage of the revenues to the other company for the use of its equipment and employees.

The shipment in question, an enclosed gear weighing approximately 62,000 pounds, was received by Home at King of Prussia, Pennsylvania. It was consigned by Philadelphia Gear Corporation to U.S. Naval Construction, National Aeronautics and Space Administration, Gulfport, Mississippi. The shipment proceeded south, over Home's routes, to Marietta, Georgia.

At Home's facilities in Marietta, the cargo was transferred to another Home trailer. The transfer was necessary in order to comply with Mississippi regulations governing the number of axles required on a trailer carrying a load of this weight. The Home trailer was then attached to a Jones tractor, operated by a Jones employee. From Marietta to Fruithurst, Alabama, the termination point of Home's ICC authority, the tractor was spot leased to Home giving it control of the driver and the shipment. Under the interchange agreement, Jones received 80% of the revenues from this portion of the shipment as consideration for the use of its tractor and driver.

At Fruithurst, the spot lease terminated and Jones assumed full control of the shipment for the balance of the journey. For convenience, and because of a lack of facilities at Fruithurst, the cargo remained on the Home trailer. The trailer was loaned to Jones at no charge. This is a common practice in the trade, which Jones has reciprocated.

The accident occurred on December 10, 1965, twenty-five miles south of Montgomery, Alabama. Cargo damages of $19,680 were sustained and satisfied by Jones. The accident occurred on routes for which Jones had ICC authority and during a portion of the shipment from which Jones received all of the revenue.

Jones proceeded to trial on alternative theories alleging negligence in Home's inspection of the trailer and claiming indemnity by virtue of an agreement with Home. The jury's verdict, in the form of answers to seven specific questions propounded by the court, negated any basis for recovery. In this appeal Jones has abandoned its negligence theory, and makes three allegations of error relating to its claim for indemnity. Jones con-

tends that the court erred in: (1) submitting questions relating to the intention of the parties to the jury since the contract was not ambiguous; (2) excluding evidence and argument relating to insurance coverage; and (3) limiting cross-examination of certain witnesses.

## I

The indemnification agreement between the parties provides:

> Home Transportation Company, Inc. hereby agrees to hold Roy L. Jones, Inc. harmless of any liability in connection with the use and operation of automotive equipment owned by Home Transportation Company, Inc. over routes in connection with and pursuant to operating rights heretofore issued by various motor carrier regulatory bodies to Roy L. Jones, Inc. for any loss of damage which they may sustain by reason of such use and operation of said equipment owned by Home Transportation Company, Inc.

In determining the applicability of this agreement to the accident in question, the court submitted two interrogatories to the jury:

QUESTION NO. ONE

> In plaintiff's Exhibit No. 3 the phrase "automotive equipment" is used. At the time of the execution of this exhibit did the parties intend this phrase to include a semi-trailer owned by Home when such semi-trailer was being pulled by a truck-tractor owned and operated by Jones?

QUESTION NO. TWO

> At the time of the execution of plaintiff's Exhibit No. 3, did Home and Jones intend that Home would indemnify Jones for damages that might occur at a time when Jones was operating Homes' [sic] trailer over routes in connection with which Jones had a permit from the Interstate Commerce Commission?

The jury answered both of these questions in the negative.

 Jones contends that submission of either question was improper, since the agreement is plain on its face and its interpretation was a matter for the court. While Jones correctly states a general proposition of Texas law, the intent of the contracting parties becomes a question of fact proper for jury determination where the agreement is found to be ambiguous.[1]

Initially, the court determined that the phrase "automotive equipment" as used in the agreement was ambiguous. Jones contends that "automotive equipment" unequivocally denotes that which is necessary to equip an automotive unit. Home produced witnesses who testified that "automotive equipment" were words of art in the trade referring only to equipment containing its own motive power. Jones offered no evidence to rebut this testimony.

 Jones contends that the arts and wiles of attorneys are such that any word may be shown to be ambiguous. However, the ambiguity in the present case is supported by lexicographers[2] as well as opposing counsel. The court was faced with two plain meanings for the expression "automotive equipment." We feel that the determination of the intention of the parties in using the phrase was properly submitted to the jury.[3]

---

1. Trinity Universal Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571 (Tex.1968). For a discussion of the function of court and jury in contract interpretation see 3A Corbin, Contracts § 554 (1950).

2. Merriam-Webster's Third New International Dictionary lists two definitions for the adjective "automotive":
 1. containing within itself the means of propulsion; Self-Propelling.
 2. of, relating to, or concerned with vehicles or machines that propel themselves.

3. In Achterberg v. Gillett, 322 S.W.2d 306, 309 (1959), the Court of Civil Appeals of Texas stated:
 The general rule, that it is the province of the judge to construe and determine the legal effect of unambiguous written instruments, is not with-

Since the jury's resolution of this question foreclosed any reliance on the indemnity agreement, it is unnecessary to consider the propriety of the second interrogatory which also concerned the scope of the agreement.

## II

The remaining allegations of error assume that the questions of the intent of the parties in entering the indemnity agreement were properly submitted to the jury. Jones sought to influence this determination with evidence and argument relative to the fact that Home's indemnity agreement was covered by a policy of liability insurance.

The indemnity agreement between Home and Jones contained an acknowledgment by Transportation Insurance Company that Home had a policy of insurance with that company covering the type of contractual obligation undertaken in the agreement. Jones complains of the ruling of the trial court excluding this portion of the agreement from evidence, urging that it was a part of the total agreement between the parties and as such admissible. Jones further contends that he was entitled to point out the procurement of insurance to the jury as a course of conduct evidencing the way that Home understood the contract.

■ However, the acknowledgment of insurance and the fact that it was obtained are, themselves, ambiguous circumstances. They shed no light on the meaning of the agreement and admission would have prejudiced Home to no legitimate purpose.

## III

Finally, Jones complains of the court's limitation of its cross-examination of witnesses called by Home. The witnesses in question offered testimony on direct examination as to the meaning of the phrase "automotive equipment." Jones' counsel sought to ask these witnesses if the term "automotive equipment" was synonymous with the term "motor vehicle." The court sustained objections to these questions as irrelevant.

Jones now contends that it sought to relate the answers to these questions and 49 U.S.C. § 303(a) (13) which defines "motor vehicle", for purposes of the Interstate Commerce Act, as including semi-trailers. While it is doubtful that this argument adds anything to the relevance of the questions, it was not disclosed to the district court as required by Rule 46 Fed.R.Civ.Pro. and will not be considered on appeal.[4]

In light of the foregoing discussion, the judgment of the district court is affirmed.

Affirmed.

---

out qualifications. Where it becomes necessary to resort to extrinsic facts and circumstances in order to ascertain the meaning of technical or peculiar terms or construe the instrument, these matters are for the jury. The jury first answers the questions as to extrinsic circumstances or meaning of technical terms or peculiar words. With this information the court proceeds with the construction or interpretation of the instrument. (citation omitted)

4. *See*, Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F.2d 541, 552 (5th Cir. 1968), where this court noted that in furtherance of the policy of Rule 46, seeking to inform the trial judge of possible errors, appellate courts will not generally consider points raised for the first time on appeal.