**Frank S. BERLANGA, Appellant,**

v.

**Pete ELIZONDO, Appellee.**

No. 14929.

Court of Civil Appeals of Texas, San Antonio.

Feb. 3, 1971.

Rehearing Denied March 3, 1971.

758

Tracy & Cook, John D. Wennermark, San Antonio, for appellant.

Sawtelle, Goode, Troilo, Davidson & Leighton, San Antonio, for appellee.

KLINGEMAN, Justice.

Suit by Pete Elizondo against Frank S. Berlanga and Andres Martinez, Jr., for damages to his house which were incurred as the result of an automobile collision, when the automobiles being driven by Berlanga and Martinez collided at an intersection, and thereafter the automobile being

driven by Martinez struck Elizondo's house. Trial was to a jury who found that the cars being operated by Berlanga and Martinez entered the intersection at approximately the same time; that Martinez failed to yield to Berlanga; that such failure was negligence and was a proximate cause; that Martinez failed to keep a proper lookout; that such failure was a proximate cause; that Berlanga failed to keep a proper lookout; and that such failure was a proximate cause. Judgment was entered in favor of Elizondo against both Berlanga and Martinez, jointly and severally, in the sum of $1,584.70. Only Berlanga has appealed from such judgment.

The collision occurred on October 31, 1967, between 7:30 and 8:00 a. m. at the intersection of Rosillo and Saunders streets. The weather was clear and the pavement dry. Saunders runs in an easterly and westerly direction, and is 25 feet in width. Rosillo runs in a northerly and southerly direction, and is 21 feet in width. Berlanga was driving his automobile in an easterly direction on Saunders, and Martinez in a southerly direction on Rosillo. There were no traffic control devices at such intersection, either stop lights or stop signs, on the date of the accident. After the collision between the two cars, Martinez' car struck Elizondo's house, which is situated on the southeast corner of Saunders and Rosillo, approximately 25 or 30 feet from the edge of Saunders, and 20 feet from the edge of Rosillo. The amount of damages to Elizondo's house was stipulated to be $1,584.70.

By four points of error, appellant asserts that there is no evidence to support the submission of Special Issues No. Eight (lookout) [1] and No. Nine (proximate cause) [2], and that the jury's findings thereto are not supported by any evidence, and are against the great weight and preponderance of the evidence.

In support of his points of error on proper lookout, appellant asserts that the undisputed evidence establishes that he kept a proper lookout, in that he looked to his left and saw Martinez approaching the intersection and assumed that Martinez would stop, since appellant had the right of way; that a motorist is not required to anticipate negligent or unlawful conduct on the part of another; that there is a presumption of law that a driver has exercised due care, not only for his own protection, but for the protection of others, which presumption must be rebutted by evidence to the contrary, and there is no such evidence in the case.

Ordinarily, proper lookout is a question for the jury. Texas & Pacific Railway Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946); Arrington v. Paschall, 352 S.W.2d 866 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.). Although a motorist is not required to anticipate negligent or unlawful conduct on the part of others, he is not entitled to close his eyes to that which is plainly visible, and which would have been observed by a person of ordinary prudence similarly situated. DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955). In a case of this character, standards of ordinary care, such as the direction and extent of the observation which appellant should have made at any particular time, cannot be fixed with any degree of certainty, but must be left in large measure to the trier of the facts. It is well settled that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as

---

1. "*Question No. 8:* Do you find from a preponderance of the evidence that immediately prior to the occurrence in question Frank S. Berlanga failed to keep such a lookout as a person of ordinary prudence, in the exercise of ordinary care, would have kept under the same or similar circumstances?"

2. "*Question No. 9:* Do you find from a preponderance of the evidence that such failure, if any, (inquired about in Question No. 8), was a proximate cause of the occurrence in question?"

direct evidence. The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, Texas Rules of Civil Procedure, if the record discloses any evidence of probative value, which, with inferences which may be properly drawn therefrom, will reasonably support the same. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958). It is not only required that the driver of a car must look both ways before entering an intersection, even on a green light; but after entering the intersection, he must keep such a lookout for his own safety as a reasonably prudent man would do under the same or similar circumstances. Tips v. Gonzalez, 362 S.W.2d 422 (Tex. Civ.App.—San Antonio 1962, no writ); Henderson v. Smith, 354 S.W.2d 429 (Tex. Civ.App.—Fort Worth 1962, no writ); Joe D. Hughes, Inc. v. Moran, 325 S.W.2d 829 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n. r. e.); Powell v. Sanders, 324 S.W.2d 587 (Tex.Civ.App.—Texarkana 1959, no writ).

Appellant testified that he was familiar with the intersection; that as he approached the intersection, he could see in both directions and straight ahead; that out of the corner of his eye he saw Martinez' car approach the intersection; that when he first saw Martinez' car, it was about 30 feet from the intersection, and his car was about 30 feet from the intersection; that he was driving about 25 to 30 miles per hour; that he thought Martinez' car was going to yield to him, but that, " * * * I just kept on going and he kept on coming and he didn't stop and that's where he hit me."; that he did not apply his brakes prior to the accident; that in his opinion both cars reached the intersection at the same time; that, " * * * it was just neck and neck together."; that he didn't stop because he had the right of way. He further testified that Martinez' car was coming fast, and when asked why he didn't stop if he thought Martinez' car was coming fast, he stated that, "It just didn't occur to me."

Martinez testified that he was driving south on Rosillo on the way to work, and that there were two of his friends in the car with him; that he was familiar with the intersection; that as he approached Saunders, he coudn't see because of a tree, and that he slowed down so that he could get a better view; that he didn't see any cars; that after he entered the intersection, one of the passengers said, "Here comes a car," but that, " * * * it was too late, I was in the middle of the road already. I put on the brake and it just hit me."; that at such time he was at the center of the intersection; that Berlanga's car struck his car on the side close to the door; that his car reached the intersection before Berlanga's car did. He further testified that at the time of the collision, he was putting on his brakes, but that when Berlanga's car hit him, it moved his feet, and his foot slipped off the brake and hit the gas pedal; that the impact of Berlanga's car hitting him turned his car around towards Elizondo's house; that after the collision, his car hit Elizondo's house; that he did not take his foot off the accelerator after the collision and prior to the time it hit the house because, "It hit me real hard. Just knocked me senseless, I guess."

The officer who investigated the accident testified that the weather was clear on the day of the accident, the road surface was dry, it was a straight road, and it was level; that when he arrived at the scene of the accident, he found Berlanga's car south of the intersection of Rosillo and Saunders, and Martinez' car in contact with Elizondo's house; that he made an estimate as to the point of impact, which he estimated to be six feet north of the south curb line, and six feet east of the west curb line; that the point of impact on Berlanga's car was in the front of the car, and the point of impact of Martinez' car was at the right door; that Saunders Street is 25 feet wide,

and Rosillo is 21 feet wide. Thus it is seen that Martinez' car had proceeded to the southwest quadrant of the intersection.

■ Applying the well established principles of law, hereinbefore set forth, to the facts in the record, we hold that the testimony of the witnesses and the reasonable inferences to be drawn therefrom sufficiently justify the submission of the special issue on lookout to the jury, and the answer of the jury thereto.

The jury could easily infer that Berlanga's lookout was not an observant one; and that by maintaining a proper lookout, a person in appellant's position could have seen and appreciated the danger in time to avoid the collision, either by sounding his horn, applying his brakes, or turning to the right or left.

By two points of error, appellant asserts that the trial court erred in submitting Special Issue No. Nine (proximate cause), because there is no evidence to support the submission of such issue; that the jury's answer is without support in evidence, and is against the great weight and preponderance of the evidence, because: (1) The undisputed evidence shows that a new and independent cause, to wit: The placing by Martinez of his foot on the accelerator and keeping it there until he hit the house, intervened between the negligence of the appellant and the injury to appellee's property; (2) Appellant could not, by exercising ordinary care, anticipate or foresee the particular event complained of, the damage to the house by his failure to keep a proper lookout at an intersection.

In reviewing the pertinent testimony, Martinez testified that after entering the intersection, a passenger shouted that a car was coming, and he had started putting on his brake when Berlanga's car hit him; that the impact of Berlanga's car hitting him turned his car towards Elizondo's house and caused his foot to slip off the brake and hit the gas pedal; that his foot remained on the gas pedal until he hit the house; that appellant's car hit him real hard and knocked him senseless; that he panicked, the glass was hitting him, and that he didn't even know what was happening.

■ This not the type of new and independent cause that would absolve appellant from liability. The slipping of Martinez' foot onto the accelerator, and it remaining there until his car hit the house, was one of a chain of circumstances set in motion by appellant's negligence. It did not break the casual connection between appellant's negligence and the collision with appellee's house. An unbroken chain of circumstances connected appellant's negligence, the collision between the two cars, and the collision with appellee's house. An intervening cause which is set in motion by the original wrongdoer can never excuse the original act. The general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though the consequences are immediate and directly brought about by an intervening cause set in motion by the original wrongdoer. Stegall v. Missouri-Kansas-Texas R. Co., 25 S.W.2d 327, 329 (Tex.Com. App.1930); Fort Worth & D. C. Ry. Co. v. Westrup, 285 S.W. 1053 (Tex.Com.App. 1926); Holt v. Ray, 435 S.W.2d 568 (Tex. Civ.App.—Eastland 1968, no writ). To make a negligent act the proximate cause of an injury, it is not essential that the particular injurious consequences and the precise manner of their infliction could reasonably have been foreseen. If the consequences follow in unbroken sequence from the wrong to the injury, it is sufficient that if at the time of the original negligence the wrongdoer might by the exercise of ordinary care have foreseen that some similar injury might result from the negligence. Atchison v. Texas & P. Ry. Co., 143 Tex. 466, 186 S.W.2d 228 (Tex. 1945); Gulf, C. & S. F. Ry. Co. v. Ballew, 66 S.W.2d 659 (Tex.Com.App.1933).

The submission of Special Issue No. Nine, and the jury's answer thereto, are sufficiently supported by the evidence.

All of appellant's points of error are overruled. The judgment of the trial court is affirmed.