Alice **PLETZ** and **Rennert** Travel Service, Inc., Plaintiffs-Appellees,

v.

**CHRISTIAN HERALD ASSOCIATION, INC.,** Defendant-Appellant.

No. 72–1923.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1973.

Rehearing Denied Nov. 15, 1973.

Joe P. Smyer, San Antonio, Tex., for defendant-appellant.

Franklin D. Houser, Gordon W. Jones, Jr., San Antonio, Tex., for plaintiffs-appellees.

Before JONES, GODBOLD and IN-GRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

This is a Texas diversity case arising out of the breach of an alleged exclusive agency agreement between defendant-appellant Christian Herald Association, Inc., and the plaintiffs-appellees Alice Pletz and Rennert Travel Service, Inc. Plaintiff Pletz operates the Rennert Travel Service, Inc., located in San Antonio, Texas. Mrs. Pletz has been engaged in the travel service business since the latter part of 1949. Beginning in 1960, Mrs. Pletz began to operate religiously oriented tours in conjunction with several religious organizations.

The defendant Christian Herald was incorporated as a non-profit organization in New York. From its conception, the Christian Herald Association has published a layman's magazine entitled "The Christian Herald Magazine" and serves as a central agency for religiously oriented travel tours.

This case was tried before a jury and it returned a verdict for the plaintiffs in the amount of $51,250. We affirm as to Christian Herald's liability in this case, but reverse and remand on damages.

The first issue before us· is whether the district court properly submitted to the jury the issue on the existence of an exclusive agency relationship. Although there was no formal agreement between the parties, the plaintiffs introduced several letters in an attempt to establish the exclusive agency relationship. The trial court apparently determined that an agency relationship existed, but submitted to the jury the issue whether there was an exclusive agency relationship.

 It is true that the interpretation of a clear and unambiguous written instrument is a question of law for the court to decide. Hennigan v. Chargers Football Co., 431 F.2d 308, 314 (5th Cir., 1970); City of Pinehurst v. Spooner Add'n. Water Co., 432 S.W.2d 515,

518 (Tex.1968). The court, however, may conclude that the instrument is ambiguous and thus allow the jury to resolve the ambiguity by determining the underlying intent of the parties as a matter of fact. Trinity Universal Ins. Co. v. Ponsford Bros., 423 S.W.2d 571 (Tex.1968). A close examination of the correspondence here in question reveals that the instruments were ambiguous regarding the exclusiveness of the agency relationship. The language of the letters was capable of more than one meaning. Jones v. Home Transp. Co., 422 F. 2d 179, 181 (5th Cir., 1970). The court properly submitted this issue to the jury.

Whether the court erred in submitting to the jury the issue of service mark infringement is the second issue before us. Mrs. Pletz, on breach of the exclusive agency agreement, was compelled to organize her own tours in an attempt to avoid financial disaster. Mrs. Pletz was unable to promptly obtain letterheads with an original design for use in her business and, therefore, had temporary letterheads printed bearing the ship, train, airplane and world emblem used by Christian Herald on its stationery. Plaintiffs introduced evidence of other travel agency advertisements showing the wide use of these insignia by other agencies.

 As an element of proving service mark infringement, the proponent must demonstrate that the similarity between the marks would mislead and confuse the public. American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 623 (5th Cir., 1963). The question of consumer confusion is one of fact to be determined by the jury. *Id.* at 624. Accordingly, the jury's determination in this case that there was no confusing or deceptive similarity is amply supported by the evidence.

 Appellant's final contention is that the award of $51,250 damages is excessive and unsupported by the evi-

dence. The objective in awarding damages, of course, is to place the injured party in a position as good as if the contract had been fully performed. 5 A. Corbin, Contracts § 1002, at 31 (1964). More specifically, Mrs. Pletz is entitled to the net commissions paid to the other agents with whom Christian Herald began to organize tours plus out-of-pocket expenditures made in reliance on performance of the contract. *See* C. McCormick, Damages 585 (1940). *See generally* Boyle v. Bond, 88 U.S.App.D. C. 178, 187 F.2d 362, 363 (1951); Park v. Swartz, 110 Tex. 564, 222 S.W. 156 (1920); Carrico v. Stevenson, 135 S.W. 260 (Tex.Civ.App.1911, no writ). Whether this measure of damages has been exceeded is therefore the essential issue.

 Our scope of review of jury damage awards is narrow. Absent a clear abuse of discretion in denying a motion for new trial, we must adhere to the jury's determination. When the evidence as shown in the record, however, is insufficient to support the award, the jury's award would be erroneous and a new trial must be had. Ward v. Buehler, 472 F.2d 1170, 1171 (5th Cir., 1973); Glazer v. Glazer, 374 F.2d 390, 413 (5th Cir., 1967), cert. den., 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90; Whiteman v. Pitrie, 220 F.2d 914, 919 (5th Cir., 1955); Wright & Miller, Federal Practice and Procedure § 2820 (1973).

 It is therefore necessary to consider the sufficiency of the evidence underlying the jury's award of damages. In conducting a review of the evidence, we are bound to "accept all evidence in favor of the verdict as true and to give such evidence the benefit of all permissible inferences that would help sustain the jury's award." Lyle v. Bentley, 406 F.2d 325, 328 (5th Cir., 1969); *see* Hughes v. Moran, 325 S.W.2d 829, 830–831 (Tex.Civ.App., Ft. Worth 1959, writ ref'd n.r.e.).

With these principles before us, we turn to the record. The question of damages was examined during the trial of this case only twice. Testimony was elicited setting forth three principal elements of damages. First, Mrs. Pletz testified that she would have realized the travel agent's average 20% commission on the total amount paid by Christian Herald to the other travel agencies with whom it began to deal after breach of the agreement. Based upon 20% of $203,499.65, the total amount paid to other agents, the first element of damages was calculated to be $40,699.80. The second element of damages was reimbursement for the thirty tickets Mrs. Petz had already purchased and scheduled to be used in a tour that had to be cancelled when the exclusive agency agreement was breached. Estimated at $370 per ticket, the second element of damages was calculated to be $11,088. The third element of damages was reimbursement for the forty unused tickets, which Mrs. Pletz purchased and had not sold, estimated at $350 per ticket. This figure was stated to be $14,000. A total of these three figures is $65,787.80, although Mrs. Pletz testified before the jury that the total was $66,827.80. There was also evidence of damages sustained in addition to these figures when plaintiffs attempted to sell the tickets for which they committed themselves, but no precise numerical calculations were offered to show the amount of damage. These additional expenses included employment of a full-time staff member, mailing, printing and trips to other areas for negotiations. The parties stipulated that the amount of damages awarded to the plaintiffs, if any, would be reduced by $16,000 credit owed to Christian Herald.

 We cannot be sure of the subjective deliberations of the jury, but it is significant that the maximum figure of damages stated before the jury of $66,827.80 reduced by $16,000 credit owed to Christian Herald is remarkably close to the $51,250 award of damages actually rendered in this case. In light of this observation, proof of the out-of-pocket expenses incurred in attempting

**98**

to sell the unused tickets for which no precise figures were given apparently had little influence on the jury's verdict. But as the defendant points out, these figures upon which the jury seemed to principally rely may include a double recovery for commissions. This is true because it is unclear from the testimony at trial whether the estimated loss on the seventy tickets was limited to out-of-pocket costs, or whether the estimated value of each ticket included the commission Mrs. Pletz would have received if the contract had been performed. The defendant asserts that the out-of-pocket expense per ticket is $60 rather than the estimated $350 for each unused ticket and $370 for each of the tickets that was to be used on the cancelled tour. If the defendant is correct and the estimated value of the ticket includes the anticipated commission, Mrs. Pletz would be recovering her commission twice: once on the basis of 20% of the total amount paid to other agents and once based on reimbursement of the seventy tickets she purchased. If such a double recovery has been obtained, it obviously violates the rule that damages in contract are to compensate to the full extent of contractual performance, but no more.

We have no choice but to reverse this case regarding the damage issue and remand for proceedings to determine the appropriate amount of damages. The record is simply unclear. The questioning at trial did not clearly elicit from Mrs. Pletz testimony demonstrating her actual expenditures made in reliance upon the contract. Nor did counsel for either party request jury instructions that would clarify the confusion. For this court to determine whether or not Mrs. Pletz has recovered her commission twice would be mere speculation and conjecture. Therefore, we are compelled to reverse in regard to the issue of damages and remand for proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part.