REYNOLDS METALS COMPANY,
Plaintiff-Appellee,

v.

WESTINGHOUSE ELECTRIC CORPO-
RATION, Defendant-Appellant.

No. 83–2689.

United States Court of Appeals,
Fifth Circuit.

April 29, 1985.

Gary, Thomasson, Hall, Marks, Gary Norton, Shirley Selz, Corpus Christi, Tex., for defendant-appellant.

Spann, Perry & Smith, Bob J. Spann, Corpus Christi, Tex., for plaintiff-appellee.

Before THORNBERRY, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Westinghouse Electric Corporation challenges a judgment for damages entered following a jury's determination that Westinghouse breached a contract with Reynolds Metals Company. Westinghouse argues that Reynolds' contract claim was barred by disclaimers of warranty, that in any event there was no breach, and that Reynolds failed to give the required notice before suing on its claim. We reject these arguments but conclude that Westinghouse's challenge to the damage award itself is well-founded because the amounts awarded included consequential damages not recoverable under the parties' agreement. We therefore affirm the jury's finding of breach but remand for a new trial on the issue of damages.

I

-1-

In early 1970, Reynolds solicited bids for the sale of certain electrical equipment needed by its San Patricio plant in Corpus Christi, Texas. Westinghouse responded to the solicitation with a series of bids that were finalized in a full proposal to Reynolds offering to manufacture the desired equipment—a large electric transformer unit—for approximately $250,000.00. This price included not only the machinery itself, but also a "competent Westinghouse service engineer" who was to be present "for two full days ... during equipment check or startup." The proposal warranted the machinery for one year from the date of shipment and made those warranty terms the exclusive remedy of the purchaser; that is, Westinghouse disclaimed all warranties not expressed in its proposal and excluded any liability to Reynolds for "special, indirect, incidental or consequential damages" that might be sustained in the event of a breach of the sales contract or warranty.[1]

Reynolds accepted the Westinghouse proposal with a purchase order whose warranty terms conflicted to some extent with those offered by Westinghouse. The proposal and purchase order were in all other respects compatible, however, and Westinghouse acknowledged the order and began work.

---

1. Because the provisions establishing these limitations are central to the issues before us, we set them out in full:

*Warranty*

Unless a different warranty is stated or referred to on the face of this quotation, in which event such warranty shall be exclusive, Westinghouse warrants that the products sold hereunder shall be of the kind and quality described in this quotation and shall be free of defects in workmanship or materials, and Westinghouse shall, in complete fulfillment of its liabilities under this warranty and if given *prompt notice* by the Purchaser, correct, by repair or replacement, F.O.B. its factory, any nonconformity which shall appear under proper and normal use of the products within one year after the date of shipment. THIS WARRANTY, OR ANY OTHER WARRANTY STATED OR REFERRED TO ON THE FACE HEREOF, IS EXCLUSIVE AND IS IN LIEU OF ANY WARRANTY OR MERCHANTABILITY, FITNESS FOR PURPOSE, OR OTHER WARRANTY OF QUALITY, WHETHER EXPRESS OR IMPLIED.

*Limitation of Liability*

Neither party shall be liable for special, indirect, incidental or consequential damages. The remedies of the Purchaser set forth herein are exclusive, and the liability of Westinghouse with respect to any contract or sale or anything done in connection therewith, whether in contract, in tort, under any warranty, or otherwise, shall not, except as expressly provided herein, exceed the price of the product or part on which such liability is based.

The only significant addition to the parties' agreement was made in January of 1971, while manufacture of the transformer unit was still in progress. Reynolds determined that the equipment would not be put into operation until well after shipment and therefore requested an extension of the one-year warranty. Westinghouse agreed and extended the warranty for an additional twelve months "based upon storage during the first twelve months, ... [for] a net total price of $2,637.00." The warranty extension at this price was made dependent upon several conditions, including "inspection of all equipment prior to start-up, and start-up supervision by the Westinghouse Industrial Systems Department." The cost of such supervision was to be borne by Reynolds in addition to the warranty extension price, with credit to be given Reynolds for cost of the two days of start-up assistance provided for in the original agreement.

The equipment was shipped in July of 1971 and was stored in a protected location at the San Patricio plant until its installation in the spring of 1973. Reynolds hired a local electrical contractor to perform most of this work under the supervision of a Reynolds engineer, Ken Younger, and installation was substantially completed by late February. At that point Westinghouse engineer David Reindl arrived at the plant for final inspection and start-up of the equipment. Reindl had a degree in electrical engineering, but apparently lacked extensive experience with transformer units of the type being installed, and more importantly, considered it his responsibility to "technically assist" rather than to "supervise" Reynolds in the installation of the purchased equipment. Despite the alleged confusion over his responsibilities, Reindl worked with Younger over the following two months until most problems with the unit were resolved, and the equipment was placed in service in late April.

Although no deficiencies in Reindl's performance of his duties were evident at the time he rendered his services, he apparently failed to install properly the system for detection of ground current in the transformer. Both grounding pads on the transformer were connected to the grounding grid, but only one of the grounding cables was routed through the alarm system that was supposed to alert the equipment operator when significant amounts of current were being grounded from the transformer. So connected, according to Reynolds' experts, internal problems in the equipment that might otherwise be made apparent by the ground alarm system could go undetected. This error was compounded when Reindl followed Westinghouse guidelines in setting the sensitivity on the alarm for detection of ground current. Given the configuration of the grounding pads, that setting was assertedly too low to detect amounts of ground current that might otherwise indicate a problem with the transformer.

The equipment had an expected life-span of twenty to thirty years, but on April 11, 1974, less than a year after it was put into service, the transformer unit failed. The problem, according to Reynolds' experts, was two-fold. The failure itself was the result of the assertedly improper design of a compression ring in the transformer. That design allegedly caused continuous burning in the transformer from the time of installation and somewhat more serious burning on April 11, when excessive power demands were allegedly made on the transformer. The ground detection system described above contributed to the problem, according to Reynolds' experts, in that some of the low-level burning, and certainly the high-level burning on April 11, should have been detected by a properly installed ground alarm system before significant damage was done.

The transformer was shipped to Westinghouse's repair facility in Houston immediately after the April 11 incident, and at about the same time Reynolds made a warranty claim to Westinghouse based on the failure of the equipment. Westinghouse denied the claim on the ground that its

warranty had expired,[2] and Reynolds paid the repair bill on the equipment, which totalled $109,284.82. Reynolds did not otherwise level a claim against Westinghouse on the basis of this incident until it filed suit in state court in April 1976. Westinghouse timely removed to federal court based on diversity of citizenship.

–2–

Reynolds alleged causes of action in negligence, strict liability, contract, and warranty, but because the negligence and strict liability claims were barred by the applicable statutes of limitation, the case proceeded to trial under theories of warranty and contract. The primary dispute was whether Westinghouse's warranty disclaimers and limitations on liability, *see supra* n. 1, applied,[3] and in the event that they did, whether warranty protection commenced on the date of shipment of the equipment in 1971 or upon completion of the installation of the equipment in 1973. *See supra* n. 2.

At the close of all the evidence the district court granted an instructed verdict in favor of Westinghouse on nearly all issues. The court substantially agreed with Westinghouse's version of the formation of the contract, and applied Tex.Bus. & Com.Code § 2.207 (Vernon 1968)[4] to strike from the agreement all conflicting warranty terms in the Westinghouse proposal and Reynolds' purchase order. The court replaced the struck provisions with pertinent implied Code warranties,[5] but then concluded that any warranties on the equipment, whether

---

**2.** In at least one document comprising the "contract" between the parties the warranty was referred to as commencing "upon shipment and performance per Westinghouse proposal," and thus arguably did not commence running until the equipment was checked out at installation by Westinghouse service engineer Reindl. In the other contract documents, however, the agreement was clear that the two-year warranty commenced running on the date of shipment; indeed, the Reynolds purchasing official who had approved the transaction understood date of shipment to be the key date. Thus, according to Westinghouse, its warranty went into effect when the equipment was shipped in July of 1971 and expired in July 1973, two months after the equipment was placed in service.

**3.** Reynolds' theory was that the Westinghouse proposal that contained the disclaimers and limitations on liability was not sufficiently definite to constitute an "offer" and thus that Reynolds' purchase order, which contained a more extensive warranty than that offered by Westinghouse and no limitations on liability, was the controlling "offer" which was later accepted by Westinghouse. The alleged "acceptance" was Westinghouse's written acknowledgement of the purchase order, a document that contained no warranty disclaimers or limitations on the seller's liability for special, indirect, incidental, or consequential damages. Westinghouse disagreed, asserting that its proposal did constitute an "offer" and that Tex.Bus. & Com.Code § 2.207 (Vernon 1968), the U.C.C.'s "battle of the forms" provision, applied to strike all inconsistent terms from Reynolds' purchase order—the "acceptance" under Westinghouse's view of the agreement.

**4.** Section 2.207 provides in pertinent part:

*Additional Terms in Acceptance or Confirmation*
 (a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 (b) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
 (1) the offer expressly limits acceptance to the terms of the offer;
 (2) they materially alter it; or
 (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

**5.** We note that there is a split of authority on the proper application of § 2.207(b) to the particular "battle of the forms" problem presented here. The statute does not indicate whether the offeror's terms control when the offeree's acceptance includes material conflicting terms that are not expressly made a condition of his acceptance, or whether in such a case *both* parties' conflicting terms drop out, with any necessary missing terms to be supplied by the Code. *See generally* J. White & R. Summers, *Uniform Commercial Code* § 1–2 at 27–31 (2d ed. 1980) (explaining the two positions and collecting cases). As described in the text, the district court took the latter approach, assuming that the Texas courts would do likewise if presented the question. We need not here express approval or disapproval of the district court's interpretation of § 2.207(b) because that issue does not affect the outcome in this case.

provided by the Code or the agreement, were barred by applicable statutes of limitation. That is, the court agreed with Westinghouse that all warranties commenced running on the date the equipment was shipped and were thus expired when the equipment failed in April 1974. *See supra* n. 2.

The disclaimer provisions that are critical to our decision here survived the district court's application of section 2.207, however, because there was no conflicting term in Reynolds' acceptance concerning those provisions. The court concluded that Westinghouse's general disclaimer of implied warranties of merchantability and fitness survived, and that this provision effectively disclaimed any implied or express warranties for services provided incidental to the sale of the equipment. The court also concluded that the term in the proposal excluding liability for special, indirect, incidental or consequential damages was a part of the contract.

–3–

The district court's instructed verdict left Reynolds' breach of contract claim as the only theory of recovery with merit. The contract claim centered on the alleged failure of Westinghouse to send a "competent" Westinghouse service engineer "to supervise" installation of the transformer as called for by the sales contract. Although the district court interpreted Westinghouse's surviving warranty disclaimers to exclude any warranties, express or implied, relating to services supplied incidental to the sale of the equipment, the court concluded that these warranty disclaimers did not necessarily bar a breach of contract claim based on the services of David Reindl, the engineer supplied by Westinghouse. The court reasoned that given Reindl's limited qualifications and prior experience, his apparent misconception that

he was obligated to assist rather than supervise installation of the transformer, and his work at the San Patricio plant, a jury could conclude that Westinghouse had completely failed to fulfill its contractual obligation to provide a competent service engineer to supervise installation of the purchased equipment. In short, the court concluded that the evidence could support more than a claim for breach of warranty because the alleged deficiencies in Reindl's services arguably constituted a total failure of performance.

Despite strenuous objections by Westinghouse, the case was submitted to the jury on this contract theory. The jury found that Westinghouse failed to send a competent service engineer as required by the contract, and that this failure was a proximate cause of all of Reynolds' damages. The district court then entered judgment in favor of Reynolds in the amount of $109,284.82, the figure stipulated by the parties as the cost to repair the transformer, together with pre-judgment interest. Westinghouse timely filed this appeal.

II

We are persuaded that the district court was correct in submitting the breach of contract claim to the jury and that the jury's finding of breach was adequately supported by the evidence. We nevertheless reverse the district court's decision to award damages for the breach on the basis of the amounts Reynolds paid Westinghouse to repair the transformer because, causation problems aside,[6] the costs to repair the equipment are not the appropriate measure of damages here.

–1–

■ Westinghouse advances three lines of attack on Reynolds' contract theory of recovery. The first is that a claim based

---

6. Westinghouse correctly points out that under Reynolds' breach of contract theory, Westinghouse could not possibly be liable for all of the repairs performed on the transformer. Reynolds' experts explained that there was a design flaw that caused burning within the transformer, and that the flaw was a primary cause of

Reynolds' damages. The breach of contract, Westinghouse's failure to inspect and supervise properly the installation of the ground alarm system, then, only caused those extra damages resulting from Reynolds' failure to discover the burning early on in the life of the transformer, not the entire costs of repair.

on Reindl's performance under the contract can be none other than a claim for a breach of warranty for services supplied incidental to the sale of the equipment. Because the district court ruled that any such warranty was effectively disclaimed in Westinghouse's general disclaimer of warranty, Westinghouse urges that any contractual claim arising out of the services provided necessarily was barred as well. We disagree. If Westinghouse had provided a competent engineer to supervise installation of the transformer, and that engineer had not performed as expected, there would be a breach of warranty but not a total failure of performance. In contrast, if Reindl did not even qualify as a "competent" engineer and did not believe that it was his duty "to supervise" Reynolds in the installation, then by supplying him Westinghouse failed to perform at all as promised under the contract. Such a failure would constitute a total failure of performance, a breach of contract for which the warranty disclaimer would not protect Westinghouse, or at least the jury was entitled to so conclude on this record.

A related argument of Westinghouse, that the contract did not impose upon it any *obligation* to provide an engineer to supervise the installation of the equipment, and therefore that Reindl's allegedly inadequate supervision could not have been a breach, is more persuasive. The source of the asserted duty to supervise installation was the modification of the agreement in 1971 whereby Westinghouse agreed to extend an additional one year of warranty protection for $2,637.00, contingent upon "inspection of all equipment prior to start-up, and start-up supervision by Westinghouse...." We agree with Westinghouse that the supervision provision was for its own benefit, rather than that of Reynolds, and thus that a more reasonable construction of the contract as amended is that it gave Westinghouse the *right* but not the *obligation* to supervise installation. We say "reasonable" because here the effective result of the district court's interpretation is that the agreement to extend the warranty for one year actually gave Reyn-

olds another *four* years of protection (under the Texas statute of limitations for breach of contract).

■ The district court, however, had no opportunity to consider this argument, because Westinghouse did not raise the point until it brought this appeal. Westinghouse challenged the district court's submission of the contract claim to the jury on a number of grounds, but never raised the argument outlined above, and indeed failed to object to that portion of the charge which instructed the jury that Westinghouse was obligated under the contract to provide an engineer *to supervise* installation. We refuse to entertain theories raised for the first time on appeal. *McClure v. Mexia Independent School District*, 750 F.2d 396, 401 n. 4 (5th Cir.1985).

■ We are also unpersuaded by Westinghouse's final attack on Reynolds' contract theory: that there was inadequate notice of breach as required by Tex.Bus. & Com.Code § 2.607 (Vernon 1968). The notice provisions of the Code under § 2.607 are not stringent and are liberally construed by the Texas courts. *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 889 (Tex.Civ.App.—El Paso 1979, no writ). The question of the adequacy of such notice depends on the reasonableness of the efforts by the wronged party to communicate his dissatisfaction with the tendered performance, considering all the circumstances. *Id.; accord Lafayette Stabilizer Repair, Inc. v. Machinery Wholesalers Corp.*, 750 F.2d 1290 (5th Cir.1985) (construing U.C.C. 2–607 under Florida law). We think the jury's finding of reasonable notice is adequately supported by the record.

–2–

The district court correctly found that Westinghouse's disclaimer of liability for special, indirect, incidental, and consequential damages was part of the parties' contract. Cognizant of the need to enforce this limitation, the district court excluded costs of transporting the transformer to

and from Houston for repairs and excluded all lost profits claims by Reynolds. Westinghouse argues that the district court failed to give full effect to this limitation, however, because the court awarded Reynolds the cost to repair its transformer as damages for the found breach. Such damages, Westinghouse argues, are also consequential damages which may not be recovered under the agreement. We agree.

The law of contract, whether under the common law or the Uniform Commercial Code,[7] generally authorizes damages for breach in the amount of the expectancy interest of the wronged party. That is, the rules for contract damages are intended to place the victim of the breach in the same position he would have occupied had the breach not occurred. *Pletz v. Christian Herald Ass'n, Inc.,* 486 F.2d 94, 97 (5th Cir.1973) (applying Texas law); *Howard v. Chris-Craft Corp.,* 562 F.Supp. 932, 940 (E.D.Tex.1982) (same). There are three principal elements to such damages: (1) general difference-in-value losses—the difference in value to the wronged party of the performance or goods tendered and the performance or goods as promised under the contract; (2) incidental losses—costs incurred in a reasonable effort, whether successful or not, to avoid losses caused by the breach; and (3) consequential losses—items such as lost profits or injuries to person or property foreseeably caused by the breach. *See, e.g.,* Tex.Bus. & Com. Code §§ 2.713, 2.714 (Vernon 1968); Restatement (Second) of Contracts § 347 (1979).

While incidental losses are often readily identifiable as an item of contract damages, difference-in-value losses are sometimes difficult to separate from those which are consequential. Distinguishing the latter items is not ordinarily important in contract cases, given the general principle that all expectancy damages are recoverable. But whenever the parties have, as here, excluded consequential damages by agreement, the court must be careful to limit the damage award to the difference-in-value component of the contract claim and must not include damages for that which would otherwise be compensable as consequential losses.

Professors White and Summers explain the problem and the proper implementation of the consequential damages limitation with the following illustration:

> [I]n *Russo v. Hilltop Lincoln-Mercury,* 479 S.W.2d 211, 10 U.C.C. 768 (Mo.App. 1972), defective wiring caused a fire which destroyed the buyer's new automobile. The court awarded the buyer the full purchase price of the automobile without identifying that portion of the price which represented recovery for consequential damages. Only the difference between the automobile's warranted and actual value at the time of acceptance could be recovered as general damages under 2–714(2). The defective wiring system reduced the actual value of the automobile at the time of acceptance below the purchase price, but the defect did not render the automobile worthless as of the acceptance date. A large part of the fire damage was therefore consequential. Had the parties excluded consequentials by contract, the court would have had to identify the value differential component of the buyer's total loss.

J. White & R. Summers, *Uniform Commercial Code* § 10–4 at 386–87 (2d ed. 1980).

Applying this limitation in calculating the damages recoverable in the case at bar, we rely on Tex.Bus. & Com.Code

---

7. We apply the law of the Texas Business & Commerce Code to the breach of contract claim because although the claim concerns installation services, there was but one contract, and that contract was primarily for the sale of goods—the transformer. Texas follows the rule that where the primary purpose of such a contract is the sale of goods, the U.C.C. provides the governing law. *See G-W-L, Inc. v. Robichaux,* 643 S.W.2d 392, 394 (Tex.1982). The choice of law is actually unimportant in this case, for, as we shall explain, under the generally accepted doctrines defining consequential damages, whether under the U.C.C. or the common law, the resolution of our problem is the same.

§ 2.714 (Vernon 1968)—the damages provision in the U.C.C. most analogous to the failure of performance claim here [8]—and the analogy provided by Professors White and Summers in the sale of goods case described above. Section 2.714(b) tells us that the general difference-in-value damages to which Reynolds is entitled for Westinghouse's failure to provide a competent service engineer to install the purchased equipment is the difference in value to Reynolds at that time of the services provided and those promised. Presumably such damages would be determinable in terms of the fee that would have been charged Reynolds by a competent and properly prepared service engineer less the market value of the services that Reindl provided.

We recognize that it was a foreseeable consequence of Westinghouse's breach of contract that the alarm system might fail to detect ground current. It was also foreseeable that this failure might in turn permit burning within the transformer to occur unbeknownst to Reynolds and thus exacerbate the damage done to the transformer if short circuiting occurred. Such foreseeable damages are ordinarily recoverable under an expectancy theory, but they are nevertheless *consequential* losses and do not reflect the difference-in-value damages attributable to the original breach of contract. The proximate cause inquiry submitted to the jury here therefore cast too broad a net and captured more than those damages compensable under the contract. *See Chrysler-Plymouth City, Inc. v. Guerrero,* 620 S.W.2d 700, 706 (Tex.Civ. App.—San Antonio 1981, no writ) (no need for proximate cause issue or finding where damages sought did not include incidental or consequential damages); *Calloway v. Manion,* 572 F.2d 1033, 1037 n. 6 (5th Cir.1978) (same, applying Texas law). In order to give effect to the consequential damages limitation agreed to by these parties, there must be a new trial on the issue of damages.[9]

### III

In sum, we affirm the jury's finding of a breach of contract, but conclude that the losses compensable under the agreement did not include costs of repair. We therefore remand for a new trial on the issue of damages.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

**8.** § 2.714 provides as follows:
*Buyer's Damages Breach in Regard to Accepted Goods*
(a) Where the buyer has accepted goods and given notification (Subsection (c) of Section 2.607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(c) In a proper case any incidental and consequential damages under the next section may also be recovered.

**9.** In light of our decision on the proper measure of damages, we also vacate the district court's award of pre-judgment interest. Westinghouse raises several attacks on that award in this appeal, but we express no opinion on the merit of those arguments. We note only that the issue of entitlement to prejudgment interest under Texas law is a slippery problem at best and that this court has pending before it an appeal involving the issue. In the present case we leave the matter for the district court to decide in the first instance on remand.