Opinion issued April 28, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00876-CV

———————————

Powell electrical systems, inc. f/k/a powell electRical manufacturing company, Appellant and Cross-Appellee

V.

Hewlett packard
company, Appellee
and Cross-Appellant



 



 

On Appeal from the 55th District Court

Harris County, Texas



Trial Court Case No. 2007-47002

 



 

O P I N I O N

          Crossed wires caused an on-site electrical
transformer to blow, necessitating repairs and the use of a temporary
transformer while the blown transformer was out of commission. The
manufacturing plant owner sued its electrical services company for breach of
contract and breach of warranty. The trial court rendered judgment on the
jury’s verdict favoring the owner. On appeal, Powell Electrical Systems, Inc.
(“Powell”) asserts that (1) all of the damages awarded by the jury are contractually
barred consequential damages, (2) because the damages are barred, Hewlett
Packard Company (“HP”) is not entitled to attorney’s fees as a prevailing
party, and (3) the liability questions that the trial court submitted
erroneously conflate proper and improper theories of liability. In a cross-appeal,
HP argues that the jury’s damages and attorney’s fees findings impermissibly
reduce the awards to fifteen percent less than the amount conclusively
established by the evidence and that it is entitled to appellate attorney’s
fees. 

We conclude that (1) most of the damages the jury awarded are direct
damages, but the damages relating to loss of use are consequential damages, (2)
the jury charge is proper, (3) HP did not establish the full amount of its
damages as a matter of law and thus is not entitled to an increased award, (4) the
jury’s take-nothing award for appellate attorney’s fees is not supported by
legally sufficient evidence, and (5) in light of our reduction of HP’s damages,
the jury’s award for attorney’s fees at trial must also be remanded. We therefore
reverse the trial court’s judgment with respect to the award of damages
pursuant to the jury findings on damage elements (d) and (e), relating to costs
for loss of use, and reform the judgment accordingly. We reverse the trial
court’s judgment with respect to the award of attorney’s fees at trial and on
appeal and remand those issues. We affirm the trial court’s judgment in all
other respects.

Background

HP owns a manufacturing facility in Houston with its own power substation.
The substation uses a two-transformer system to power the facility. Powell
designs, manufactures and installs electrical equipment. HP contracted with
Powell to perform breaker retrofitting services at the substation. This process
required Powell to remove breaker cables from the transformers’ breaker
cabinets and then reconnect them when the work was completed. Powell failed to
document how the breaker cables were placed before removing them and
unintentionally crossed certain breaker cables when it reconnected them. The
cross-phased breaker cables caused one of HP’s dual transformers, transformer
B, to fail. As a result, HP incurred costs to repair transformer B and to
obtain a temporary transformer for use while the repairs were made. HP brought
this suit against Powell to recover for these costs. 

After a trial on the merits, the jury found in favor of HP on its breach
of contract and breach of express warranty claims against Powell, awarding HP
$926,585.98 in damages and $163,526.24 for attorney’s fees. The damages awarded
by the jury included the following elements: 

(a)             
fault testing and removal of
transformer B: $76,518.03;

(b)            
disposal of oil from transformer
B: $17,067.80;

(c)             
repair of transformer B:
$581,024.20;

(d)            
cost of temporary transformer less
amount for which it was sold: $105,097.26;

(e)             
installation and testing of
temporary transformer: $73,718.15; and

 

(f)              
reinstallation of transformer B:
$73,160.54.

 

The jury’s findings on damages and attorney’s fees are approximately fifteen
percent less than the amount HP sought at trial, except that the jury refused
to award any fees for an appeal. HP asked the trial court to enter judgment on
the jury verdict in its favor but to award the full amount it sought. Powell
asked the trial court to disregard the jury findings, asserting that the
damages found are barred by the limitations of liability in the contract. The
trial court denied both parties’ motions and rendered judgment on the verdict,
reducing the total damages award to $876,810.61 to account for an offset and
awarding pre- and post-judgment interest. 

Contractual
Limitation on Consequential Damages

Powell contends that the trial court erred in denying Powell’s motions to
disregard the jury finding on damages. Powell argues that the  damages found by the jury are consequential
damages, which are barred under the terms of the parties’ contract. HP responds
that the damages are direct damages, rather than consequential damages. The
parties agree that their contract bars consequential damages but not direct
damages.[1]


A.      Standard of Review

The dispute between the parties is whether the damages awarded in this
case constitute direct or consequential damages under Texas law. We review such
questions of law de novo. In re Humphreys,
880 S.W.2d 402, 404 (Tex. 1994); Harris
Cnty. Appraisal Dist. v. Wilkinson, 317 S.W.3d 763, 766 (Tex. App.—Houston
[1st Dist.] 2010, pet. denied). Likewise the interpretation of unambiguous
contracts is a legal question that we review de novo. MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650–51
(Tex. 1999); Atlantic Lloyds Ins. Co. v.
Butler, 137 S.W.3d 199, 209 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied). 




 

B.      Applicable Law on Damages

          1.       Direct Damages

Direct damages are those damages that flow naturally and necessarily from the breach. Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997) (emphasis added). “Direct
damages compensate for the loss, damage, or injury that is conclusively
presumed to have been foreseen or contemplated by the party as a consequence of
his breach of contract or wrongful act.” Id. “By definition, if
particular damages are specifically accounted for in the contract, they are
direct, not consequential, in nature.” McKinney & Moore, Inc. v. City of
Longview, No. 14–08–00628–CV, 2009 WL 4577348, *5 (Tex. App.—Houston [14th
Dist.] Dec. 8, 2009, pet. denied) (mem. op.) (citing Boyer, Inc. v. Trinity
River Auth. of Tex., 279
S.W.3d 354, 358 (Tex. App.—Fort Worth 2008, pet. denied));[2]
see also Tennessee Gas Pipeline Co. v. Technip USA Corp., No. 01–06–00535–CV,
2008 WL 3876141, at *8–9 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet.
denied) (mem. op.). 

Examples of direct damages can be found in our decision in Tennessee Gas Pipeline. In that case, a pipeline owner,
Tennessee Gas Pipeline (“TGP”), sought to recover damages for Technip’s delayed
and defective construction work on a pipeline. Tennessee Gas Pipeline,
2008 WL 3876141, at *8. The parties’ contract precluded recovery of
consequential damages, and we reviewed the various categories of damages
awarded to determine which damages were consequential damages and which were
direct. Id. at *8–10. We concluded
that various “project delay costs”—including costs for labor, travel,
environmental contractors, inspectors, purchase and supply of additional
construction consumables, wastewater hauling, services and utilities—were
direct damages, because the contract contained a provision requiring TGP to
provide power during construction. Id. at
*8–9. On this basis, we concluded that Technip contemplated that its
construction delay would naturally and necessarily cause TGP’s power costs to
be extended over a longer period of time. Id.;
see also McKinney & Moore, Inc., 2009 WL 4577348, at *5.   

2.       Consequential
Damages

“Consequential damages” are those which result naturally, but not necessarily, from the breach. Arthur
Andersen, 945 S.W.2d at 816 (emphasis added); see Stuart v. Bayless,
964 S.W.2d 920, 921 (Tex. 1998). Consequential damages are recoverable
only if they are foreseeable and directly traceable to the wrongful act and
result from it. Stuart, 964 S.W.2d at
921; Basic Capital Mgmt., Inc. v. Dynex
Commercial, Inc., No. 08–0244, --- S.W.3d ---, 2011 WL 1206376, at *5 (Tex.
Apr. 1, 2011) (quoting Stuart).

Tennessee Gas Pipeline also provides examples of consequential damages. We held that TGP could not recover for the cost of renting a
backup generator after a power outage occurred, which TGP asserted would not
have been necessary but for Technip’s premature dismantling of the existing
backup generator before the new generator was fully operational. Tennessee
Gas Pipeline, 2008 WL 3876141, at *9–10. We concluded that the power outage
and need for a backup generator could not be conclusively presumed to have been
foreseen by the parties as a consequence of Technip’s breach. Id. We also precluded as consequential
damages TGP’s alleged losses relating to (1) lost efficiency from the extended
use of the old compressor rather than the new compressor, (2) lost investment
returns on funds tied up during the delay, (3) costs incurred as a penalty
under TGP’s contract with the utility company for delayed commencement of
utilities use, and (4) lost profits on gas that TGP was unable to sell because
it had to be used for venting and to perform emergency shutdowns. Id. at 10–11.

C.      Analysis

We conclude that some of the damages awarded to HP are
permitted direct damages and some are impermissible consequential damages.

1.       Costs Relating
to Transformer B: Damage Elements (a), (b), (c) & (f)

 

Damages that flow “naturally and necessarily” from a breach
of the parties’ contract are those inherent in the nature of the breach of the
obligation between the parties, as compared to those damages that flow
“naturally but not necessarily” from the breach because they require the
existence of some other fact (known or unknown) beyond the relationship between
the parties. Cf. Tennessee Gas Pipeline,
2008 WL 3876141, at *9–10 (holding that cost for backup generator necessitated
by power outage were consequential damages of defendant’s premature dismantling
of old generator and costs for penalty under utility contract for delayed use
of utilities were consequential damages from construction delay because the
cost depended on terms of owner’s contract with third party utility company); Hoppenstein Props., Inc. v. McLennan Cnty.
Appraisal Dist., --- S.W.3d ---, No. 10–09–00426–CV, 2010 WL 5419013, at *3
(Tex. App.—Waco Dec. 22, 2010, no pet.) (profits that plaintiff would have
realized under contract between parties are direct damages, while profits
plaintiff would have realized on other contracts are consequential damages); Cherokee
Cnty. Cogeneration Partners v. Dynegy Mktg. & Trade, 305 S.W.3d 309, 314 (Tex. App.
—Houston [14th Dist.] 2009, no pet.) (same).

Here, the damages to transformer B are inherent in the
nature of the breach of Powell’s contractual and warranty obligations to HP.
Powell’s re-energizing of transformer B while the B-side breakers were
cross-phased caused transformer B to fail, and the failure of transformer B
necessitated its testing, removal, oil disposal, repair and reinstallation. No
additional link in the causal chain was necessary to bring about the injury or
damages. The parties can be “conclusively presumed to have foreseen” that Powell’s
substandard performance would result in the failure of the transformer and that
failure of a transformer would require HP to incur costs associated with
repairing it. Cf. Arthur Andersen,
945 S.W.2d at 816.

We are not persuaded otherwise by
Powell’s argument that direct damages in this case should be limited to the
cost of uncrossing the wrongfully crossed cables or the difference between the
value of Powell’s actual services and the value of the services as promised by
Powell. As an initial matter, contrary to Powell’s narrow construction of the
contract, the subject of the
contract is Powell’s “Electrical Contractor work for [HP] related to the Willow
Substation 34.5KV Breaker Retrofit,” which the evidence shows necessarily
included temporarily unhooking the breaker cables from transformer B’s breaker
cabinet and then putting them back. This does not appear to have been disputed
at trial, and Powell’s own employee averred that “[t]he scope of the Powell/HP
contract included the unlanding and relanding of the feeder cables to the
circuit breakers.”

The contract expressly contemplates that testing and repair
costs may be incurred as a result of defective performance by Powell.[3]
See McKinney & Moore, Inc., 2009 WL 4577348, at *5 (holding that expenses incurred under
construction contract were direct damages because they were contemplated in contract
provision that required defendant to reimburse plaintiff for damage occurring
during work on project and that were caused by negligence or fault of defendant
or its agents); Tennessee Gas Pipeline Co., 2008 WL 3876141, at *8–9
(holding costs of providing power during construction delay were direct damages
because contract provision specified that owner would provide electricity to
construction site). Powell asserts that these provisions refer to the
correction or repair of “Work,” which is defined in the contract as Powell’s
own work, and thus do not extend to damages to transformer B, which Powell
asserts is not the subject of its work. Powell’s narrow definition of its
services under the contract is not consistent with the evidence; moreover,
these provisions of the contract do not refer only to the defined, capitalized
term “Work,” but also refer to “damages to other work” and costs of repairing
“work damaged” by Powell’s poor performance. The contract contains a provision requiring HP to provide power during
Powell’s work; this provision expressly states that Powell is responsible for
the proper use of the power HP supplies.

To support its contention that HP’s damages should be
limited, Powell relies on Reynolds Metals
Co. v. Westinghouse Electric Corp., 758 F.2d 1073 (5th Cir. 1985). The
dispute in Reynolds arose out of a
contract between Westinghouse and Reynolds for the purchase and installation of
a transformer at Reynolds’s facility in Corpus Christi, Texas. Id. at 1074. The transformer had a
design defect, which caused internal burning; additionally, Westinghouse
improperly installed the transformer’s system for the detection of ground
current. Id. The internal burning
caused the transformer to fail. Id.
at 1075. The improperly installed detection system contributed to the problem
by not alerting Reynolds of the problem prior to the transformer’s failure. Id. At the time of trial, Reynolds had
two claims against Westinghouse: (1) breach of warranty, based on the defect in
the transformer and (2) breach of contract, based on the improper installation
of the ground current detection system. Id.
at 1076–77. The district court entered a directed verdict on the warranty
claims on the basis of the applicable statutes of limitations, and the jury
found in Reynolds’ favor on the breach of contract claim. Id. at 1078–79. The trial court entered judgment on the jury’s
award for the cost of repairing the transformer but excluded damages for lost
profits and the costs of transporting the transformer to and from Houston for
repairs as consequential damages, which were precluded under the parties’
contract. Id. at 1078–79. On appeal,
Westinghouse argued that the cost of repairs were also consequential damages
excluded under the contract. Id. at
1079. The Fifth Circuit agreed, holding that the proper measure of damages in
that case was the difference in the value of what was promised under the
contract and what was actually delivered—the measure of damages that would
apply to a sale of goods under Chapter 2 of the Texas Business and Commerce
Code (the “UCC”). Id. at 1079–80
(citing Tex. Bus. & Com. Code Ann.
§ 2.714 (West 2009)). 

Powell asserts that Reynolds
stands for the proposition that anything other than the difference in value
between what was bargained for and what was received constitutes consequential
damages. We disagree with that characterization of Reynolds.[4]
The application of the UCC measure of damages in Reynolds is understandable in light of the circumstances of the
case: as the Fifth Circuit noted, the primary cause of Reynolds’s damages was
the burning in the transformer (for which Reynolds could not recover due to
limitations); the improper installation (for which Reynolds could recover) contributed
to the damages only to the extent they could have been prevented by earlier
discovery. Id. at 1076–77 and n.6. The
design defect, for which Reynolds could not recover, was a causal link that
brought about Reynolds’s damages. Westinghouse’s improper installation of the
detection system was one step removed. See
Reynolds, 758 F.2d at 1076–77, 1080; Tennessee
Gas Pipeline, 2008 WL 3876141 at *9–10. No such intervening causal link is
present here.

The measure of damages used in Reynolds would not properly compensate HP under the circumstances
of this case, where Powell’s breach of the contract and its warranties were the
direct cause of HP’s damages. We hold that HP’s costs of repair to the unit
that Powell serviced and destroyed are direct damages resulting from Powell’s
breach. 

2.       Costs for
Relating to Temporary Transformer: Damage Elements (d) & (e)

 

Powell suggests that all of HP’s damages constitute “loss of
use” damages and are therefore consequential. While HP’s costs relating to the
repair of transformer B are not loss of use damages, HP’s decision to install a
temporary transformer and use it while transformer B was being repaired are
lost use damages. Like lost profits, lost use damages are frequently, but not
categorically, consequential in nature. See
Tennessee Gas Pipeline, 2008 WL 3876141 at *8, 10 (holding that provision barring
recovery of consequential damages did not necessarily bar all loss of use
damages but damages for loss of use of money were consequential). Here, we
conclude that HP’s costs relating to the temporary transformer are
consequential rather than direct damages. 

HP’s power substation
is designed to run on a two-transformer system, but the evidence demonstrates
that it can run with only one transformer for some period of time and that the
ability to run on one transformer was a necessary part of Powell’s performance
of its work under the contract pursuant to the parties’ agreed procedures for
the work. We cannot conclude that Powell and HP may be “conclusively presumed
to have foreseen” that Powell’s breach would necessitate the use of a temporary
transformer. See Arthur Andersen,
945 S.W.2d at 816. We therefore conclude that HP’s costs in obtaining and
installing the temporary transformer are consequential damages.

          We overrule Powell’s first issue with respect to
damage elements (a), (b), (c) and (f), and we sustain Powell’s first issue with
respect to damages elements (d) and (e).

Attorney’s fees Under
Section 38.001

          Powell’s argument that HP cannot
recover attorney’s fees under Section 38.001 of the Civil Practices and
Remedies Code is predicated on Powell prevailing on its first issue in its
entirety, such that HP recovers no damages. Because we conclude HP is entitled to recover
some damages, we also conclude that attorney’s fees are authorized under
Section 38.001.[5] Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (West 2008); see also Green
Int’l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (holding that a party
may recover attorney’s fees under Section 38.001 only if the party prevails on
a cause of action for which attorney’s fees are available and recovers
damages).

          We overrule Powell’s second issue. 

Jury
Charge

          The trial court’s jury charge
contained broad form liability questions for breach of contract and breach of
warranty.[6]
Powell argues that these broad form questions impermissibly commingled valid
and invalid theories of liability. See
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 379, 389 (Tex. 2000).
Specifically, Powell argues that HP pursued multiple alleged breaches of the
contract and warranty but some of these theories of liability were not
supported by evidence on the element of causation. Powell asserts that it
preserved this issue for appeal by timely objecting to the form of the
questions and tendering substantially correct questions to the trial court. HP
responds that it had only a single theory of liability for breach of contract
and for breach of warranty, but that these theories were supported by multiple
factual bases. HP asserts that broad form submission was appropriate under
these circumstances.  

          A.      Standard of Review

We review a challenge to the trial court’s jury charge under
an abuse of discretion standard. Tex. Dep’t of Hum. Servs. v. E.B., 802
S.W.2d 647, 649 (Tex. 1990); Moss v. Waste Mgmt. of Tex., Inc., 305
S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing European
Crossroads’ Shopping Ctr., Ltd. v. Criswell, 910 S.W.2d 45, 54 (Tex. App.—Dallas 1995, writ denied). A
trial court abuses its discretion when it acts in an arbitrary or unreasonable
manner, or if it acts without reference to any guiding rules or principles. Tex.
Dep’t of Hum. Servs., 802
S.W.2d at 649; Moss, 305 S.W.3d at
81. A trial court has wide discretion in submitting instructions and jury
questions. Moss, 305 S.W.3d at 81
(citing Howell Crude Oil Co. v. Donna Ref. Partners, Ltd., 928 S.W.2d 100, 110 (Tex.
App.—Houston [14th Dist.] 1996, writ denied).

If we determine that the jury charge was erroneous, we must
then consider whether the error requires reversal. See, e.g., Transcon. Ins. Co. v. Crump, 330 S.W.3d 211, 221 (Tex.
2010). Generally, charge error requires reversal of a judgment only where the
error was harmful in the sense that it probably caused rendition of an improper
verdict. Id. (quoting Columbia Rio Grande Healthcare, LP v. Hawley,
284 S.W.3d 851, 856 (Tex. 2009)). In the context of a Casteel problem, however, the comingling of valid and invalid
theories of liability in a single jury question may make it impossible for the
court of appeals to determine whether the jury based its verdict on a properly
submitted theory or on an invalid theory that should not have been submitted. See Casteel, 22 S.W.3d at 388 (finding harmful error where trial court’s charge
contained broad-form liability question that submitted, along with valid
theories of liability, theories of liability under the Deceptive Trade
Practices Act (“DTPA”) that plaintiff could not assert because he was not a
consumer). In that situation,
the error will be deemed harmful and the new trial is required. Id. at 388–89. 

B.      The Jury Charge
Was Not Erroneous 

 

A trial court errs by submitting to the jury theories of
liability that are not legally viable — e.g., liability theories that have not
been pled, are not supported by the legally sufficient evidence, or are not
supported by operative law. See Tex. R. Civ. P. 277 (requiring that the
trial court submit issues that are raised by the pleadings and the evidence); Casteel, 22 S.W. 3d at 390 (stating that
Rule 277 implicitly mandates that the jury be able to base its verdict on
legally valid questions and instructions); see
also Romero v. KPH Consol., Inc., 166 S.W.3d 212, 215 (“[B]road-form
submission cannot be used to put before the jury issues that have no basis in
the law or the evidence.”). Thus, although Rule 277 of the Texas Rules of Civil
Procedure requires the trial court to submit broad-form questions whenever
feasible, submission of broad-form liability question may be infeasible when
the trial court is uncertain about whether particular theories of liability
should be submitted. Tex. R. Civ. P.
277; Casteel, 22 S.W.3d at 390. In
that circumstance, judicial economy may favor separate submission of liability
theories to prevent the need to re-try the cause of action if the trial court
reaches an incorrect decision with regard to which theories of liability should
be submitted to the jury. Casteel, 22
S.W. 3d at 390.

          1.       Question
1: Breach of Contract

Powell argues that HP advanced eleven theories of contract
liability at trial, reciting the eleven breaches listed in HP’s petition.
Powell argues that some of these theories were valid and some were invalid.
Powell points to  evidence in the record
of three alleged breaches other than the cross-phasing of the breakers:  Powell’s failure to properly connect internal
CT wires, to keep its work site clean, and to live up to its contractual
obligations after transformer B failed. 

HP responds that Powell’s argument inaccurately equates
“theories of liability” with factual allegations, when the term is properly
understood to relate to causes of action such as breach of contract or breach
of warranty. HP asserts that the two liability questions submitted only a
single theory of liability, each of which was supported by several factual
bases. HP points out that the Supreme Court of Texas has “limited [its]
holdings in Casteel and Harris County to submission of a
broad-form question incorporating multiple theories of liability or multiple
damage elements.” Bed, Bath & Beyond,
Inc. v. Urista, 211 S.W. 3d 753, 756–57 (Tex. 2006) (citing Casteel, 22 S.W. 3d at 388 and Harris
County v. Smith, 96 S.W.3d
230, 233 (Tex. 2002), which applied Casteel
analysis to submission of an unsupported element of damages). HP also
asserts that, while there may have been evidence that Powell’s conduct breached
the contract in multiple ways, “HP’s whole theory of the case focused on one breach that resulted in the damages
to transformer B—i.e. cross-phasing
the breaker cables.” HP never contended that any other breach caused damages,
so there was no risk that the jury might find damages based on evidence of
other breaches. 

We conclude that HP’s evidence relating to Powell’s failure
to properly connect CT wires, keep its work site clean, and provide assistance
after transformer B failed did not result in the submission of invalid theories
of liability. In reaching this conclusion, we look to the distinction
recognized by the Supreme Court of Texas in Columbia Rio Grande Healthcare,
L.P. v. Hawley, 284 S.W.3d 851, 864 (Tex. 2009) between the jury charge in
that case and the jury charge in Columbia Medical Center  of Las Colinas v. Bush ex rel. Bush, 122
S.W.3d 835 (Tex. App.—Fort Worth 2003, pet. denied). The Hawley court found error in the jury charge; the Bush court found no error.

In Bush, the
medical center argued on appeal that the court improperly submitted invalid
theories of liability because some of the specific acts of negligence pled by the
plaintiff were not supported by evidence. Bush,
122 S.W. 3d at 857. The medical center asserted that the trial court erred by
refusing its proposed limiting instructions to the jury not to consider those
specific acts of negligence. Id. at
857–58. The court of appeals affirmed the trial court’s judgment, concluding
that the charge “properly submitted one theory of liability and
recovery—negligence—in a single broad-form question.” Id.

In Hawley, the
trial court submitted a broad-form jury question on negligence and included in
the charge an instruction that the defendant-hospital acted “through its
employees, agents, nurses and servants.” The trial court denied the hospital’s
request that the jury be instructed not to consider the acts of a particular
defendant-doctor, Dr. Valencia, in determining whether the hospital was
negligent because Dr. Valencia was an independent contractor for whose conduct
the hospital could not be held liable. Hawley, 284 S.W.3d at 862–63. The
supreme court held that the charge was erroneous because the instruction on
“employees, agents, nurses and servants” allowed the jury to improperly
determine that the hospital was negligent based only on the conduct of Dr.
Valencia. Id. at 864–65. 

Comparing the issue presented in Hawley to the issue presented in Bush, the supreme court observed that in both cases, “negligence
was the only theory of liability submitted.” 
Id. at 864. The court
distinguished the two cases on the ground that the hospital in Hawley was complaining “because the
charge affirmatively told the jury that the hospital acted through its
employees, agents, nurses, and servants and allowed the jury to speculate
whether Dr. Valencia was an agent of the hospital”; it was not complaining of
“the failure to instruct the jury that it should not consider specific acts of
negligence.” Id. The court then
observed that, considering the question and the instruction together, the trial
court’s charge “submitted four negligence questions,” one for each set of
actors identified in the instruction. Id.


Here, Powell did not request an instruction that the jury
not consider its failure to properly connect CT wires, keep its work site
clean, and provide assistance after the transformer failed in determining
whether it breached the contract. Because “Question 1” submitted only a single
theory of liability and the trial court did not otherwise instruct the jury to
consider erroneous matters, we conclude that the trial court did not err by
submitting an invalid theory of liability in “Question 1.”  Cf. Bush,
122 S.W. 3d at 857–58; Bed, Bath & Beyond, Inc., 211 S.W.3d at 757
(“When, as here, the broad-form questions submitted a single liability theory
(negligence) to the jury, Casteel's multiple-liability-theory analysis
does not apply.”); Mustafa v. Matrut, No. 01-08-00985-CV, 2010 WL
1492419, at *4–5 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010) (mem. op.), supplemented,
No. 01–08–00985–CV, 2010 WL 1839944 (Tex. App.—Houston [1st Dist.] May 6, 2010,
no pet.) (mem. op.) (holding that evidence of nonpayment of salary and writing
of bad checks did not result in submission of unpled theories of fraud
liability, where evidence supported pled fraud claim based on non-payment of
loan); Formosa Plastics Corp., USA v.
Kajima Int’l., Inc., 216 S.W.3d 436, 455 (Tex. App.—Corpus Christi 2006,
pet. denied) (op. on rehearing en banc) (“Casteel
applies to multiple theories of liability; by contrast, the instant
situation involves only one—fraud. . . . Casteel
does not require a granulated submission as to multiple acts under a single
theory of liability.”). 

          2.       Question
2: Breach of Warranty

The breach of warranty question proposed by Powell submitted
breach of express warranty as a single jury finding, not segmented by
particular factual basis or theories, but it included an instruction restating
the express warranty provided under the parties’ contract. To the extent Powell
argues that the trial court erred in refusing to include its breach of warranty
instruction, Powell does not demonstrate how its proposed instruction would
have prevented the jury from considering any improperly submitted theory of
liability or why the instruction was otherwise necessary. Nor does Powell point
to any evidence in the record that might have caused the jury to find a breach
of warranty based on conduct and that would have been excluded under Powell’s
proposed instruction. We conclude the trial court was within its discretion in
declining to submit Powell’s proposed instruction. See Bush, 122 S.W. 3d at 857–58 (holding that trial court did not
err in refusing instruction that would have directed jurors not to consider
specific acts of negligence in determining medical center’s liability). 

Cross-Appeal on Amount of 

Damages and Fees Awarded

 

          On cross-appeal, HP argues that the
jury impermissibly reduced the amount of damages and attorney’s fees by fifteen
percent,[7]
under a comparative fault theory. HP argues that it established the amount of
its damages and attorney’s fees as a matter of law, and the trial court should
have disregarded the juries’ answers on these issues and rendered judgment notwithstanding
the verdict for the full amounts proven. Powell responds that the jury awarded
less damages than HP claimed because HP failed to establish that all of its
damages resulted from Powell’s breach, and that the jury awarded less attorney’s
fees than HP claimed because HP failed to prove that all of the fees sought
were reasonable and necessary. We reverse and remand the issue of attorney’s
fees in light of our reduction of the damages award and because the jury’s
take-nothing award on appellate attorney’s fees is not supported by legally
sufficient evidence.

A.      Standard of Review

Powell raises a legal sufficiency challenge to the jury’s
damage and attorneys’ fee findings. When a party attacks the legal sufficiency
of an adverse finding on an issue on which it has the burden of proof, the
party must demonstrate on appeal that the evidence establishes, as a matter of
law, all vital facts in support of the issue. Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001) (addressing standard of review with respect to
jury finding of $0 in damages for retaliation claim) (citing Sterner v.
Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989)). In conducting a legal sufficiency
review, we review the evidence presented below in the light most favorable to
the jury’s verdict, crediting favorable evidence if reasonable jurors could and
disregarding contrary evidence unless reasonable jurors could not. Del Lago Partners, Inc. v. Smith, 307
S.W.3d 762, 770 (Tex. 2010); City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).
HP’s issue will be sustained only if its position is conclusively established
by the evidence. Francis, 46 S.W. 3d
at 41 (citing Croucher
v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983).

B.      HP
Did Not Conclusively Prove the Amount of Its Damages

          HP
contends that the proper amount of its damages award is conclusively
established by the invoices it submitted. HP points to no other evidence as
establishing its right to damages in the amount claimed. The invoices may
establish that HP spent the amounts shown in the invoices relating to
transporting and repairing transformer B, but they do not establish HP’s right
to recover all of the amounts expended as a matter of law. As Powell notes,
there was evidence from which the jury could have concluded that Powell did not
proximately cause all of these costs. There is evidence in the record tending
to show that transformer B was fifteen years old, had experienced prior faults,
was not properly maintained, and had pre–existing damage or deterioration. There
is also evidence in the record that the useful life of a transformer like
transformer B is twenty to twenty-five years on average, as well as evidence
that the repairs and replacement of parts in transformer B may have left the
transformer a better condition than it had been before the failure. 

The trier of fact is given broad discretion to award damages
within the range of evidence presented at trial. Duggan v. Marshall, 7 S.W.3d
888, 893 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing City of
Houston v. Harris Cnty. Outdoor Adver. Ass’n, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ
denied); Potter v. GMP, L.L.C, 141 S.W.3d 698, 703 (Tex. App.—San Antonio
2004, pet. dism’d) (citing VingCard A.S.
v. Merrimac Hospitality Sys., Inc., 59 S.W. 3d 847, 865 (Tex. App.—Fort
Worth 2001, pet. denied) and Duggan,
7 S.W. 3d at 893). Evidence corresponding to the exact amount found by the
trier of fact is not essential. Gibson Plumbing Heating & Air
Conditioning, Inc. v. Coolbaugh Chiropractic, No. 07-05-0449-CV, 2007 WL
763806, at *3 (Tex. App.—Amarillo Mar. 14, 2007, no pet.) (mem. op.) (affirming
jury award of amount less than total owed under bills in evidence) (citing Carrow
v. Bayliner Marine Corp., 781 S.W.2d 691, 695 (Tex. App.—Austin 1989, no
writ)); see also Reeder v. Wood Cnty. Energy LLC, 320
S.W. 3d 433, 448 (Tex. App.—Tyler 2010, pet. filed) (stating, in this context,
damages must be established with reasonable certainty, not mathematical
precision) (citing O & B Farms, Inc. v. Black, 300 S.W.3d
418, 422 (Tex. App.—Houston [14th Dist.] 2009, pet. filed)). 

Here, the jury could reasonably
have concluded that approximately fifteen percent of the repairs to the
transformer was the result of pre-existing damage to the transformer or was
attributable to pre-existing deterioration in the value of the transformer. The jury also may have reasonably
concluded that not all of the costs expended by HP were necessary to put HP in
the position it would have been in but for Powell’s breach, based on the
evidence that the replacement of certain of transformer B’s parts resulted in
an improvement upon the pre-failure condition of the transformer. Cf. Mesquite Elks Lodge No. 2404 v. Shaikh,
--- S.W. 3d ---, No. 05–08–01372–CV, 2010 WL 4142220, at *3 (Tex. App.—Dallas
Oct. 22, 2010, no pet.) (holding that evidence was not factually sufficient to
support award of all repair costs sought in breach of contract suit where there
was evidence that some repairs resulted in improvement rather than restoring
pre-breach condition); Neuman v. Spector
Wrecking & Salvage Co., Inc., 490 S.W.2d 875, 878 (Tex. Civ.
App.—Beaumont 1973, no writ) (“Even when it is proper to assess the
damages  as the cost of repairs, ‘(a)
plaintiff is not to be put in a better position by the recovery of damages for
the breach of contract than he would have been if there had been
performance.’”).

          Thus, the range of evidence presented
to the jury could reasonably allow it to find some but not all of the repair
costs paid by HP were the proximate result of Powell’s breach. Because the
jury’s award falls within this range, “[w]e are not permitted to disregard the
jury’s damages award on the basis that the jury’s reasoning in arriving at its
figure is unclear.” Duggan, 7 S.W. 3d
at 893; see also Adams v. Petrade Int’l,
Inc., 754 S.W.2d 696, 709–10 (Tex. App.—Houston [1st Dist.] 1988, writ
denied) (“Neither are we permitted to disregard the jury’s answers to the
issues merely because the jury’s reasoning in arriving at its figure may be unclear
to us.”). We conclude that legally sufficient evidence supports the jury’s
award of damages. Cf. Duggan, 7 S.W.
3d at 893 (determining that jury award of $232,500 was supported by sufficient
evidence in light of conflicting damage estimates of $425,309, $15,000,
$236,000 and $165,356); Adams, 754
S.W.2d at 709 (noting that jury award was “substantially less than the amount
that the evidence shows [plaintiff] had already paid” but within range of
damages supported by evidence, and “in reviewing the adequacy of damages, we
may not substitute our judgment for that of the jury.”); Potter, 141 S.W. 3d at 703–04 (affirming jury award of $189,595 as
within the range of evidence in breach of contract case); Vela v. Wagner
& Brown, Ltd., 203 S.W.3d 37, 50 (Tex. App.—San Antonio 2006, no pet.)
(jury was free to reject in part expert damage models of $13.9 million and $9.4
million and instead award $3 million in damages); Howell Crude Oil Co. v. Donna Ref. Partners, Ltd., 928 S.W.2d 100,
108 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (affirming jury award of
less than damages calculation presented where challenges were made to
reliability of calculation).

C.      HP Did Not
Conclusively Prove the Amount of Its Attorney’s fees, But Established Its Right
to Some Attorney’s fees

 

          The jury awarded attorney’s fees of
$163,526.24 for preparation and trial and $0 for an appeal to the court of
appeals. HP argues that the trial court should have disregarded these findings
and awarded $192,383.81 for preparation and trial and $50,000 for an appeal to
the court of appeals because HP’s evidence conclusively proved these amounts as
its reasonable and necessary attorney’s fees through the submission of bills
and attorney testimony. Powell responds that it disputed the amount of fees
requested by HP, that HP’s fee segregation evidence was “incredible on its
face,” that HP’s own counsel admitted that the requested fees included amounts
that would result in a double recovery if court costs were separately awarded,
and that the reasonableness and necessity of the fees is a question of fact
within the purview of the jury. 

          An award of attorney’s fees must be
supported by evidence that the fees were both reasonable and necessary. See
Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 10 (Tex. 1991), modified on other grounds by Tony Gullo Motors
I, L.P. v. Chapa, 212
S.W.3d 299, 313–14 (Tex. 2006); Crounse v. State Farm Mut. Auto. Ins. Co.,
--- S.W. 3d ---, No. 01–09–00183–CV, 2010 WL 5186822, at *3 (Tex. App.—Houston
[1st Dist.] Dec. 23, 2010, no pet.). “Generally, the determination of
reasonable attorney’s fees is a question of fact and the testimony of an
interested witness, such as a party to the suit, though not contradicted, does
no more than raise a fact issue to be determined by the jury.” Garcia v.
Gomez, 319 S.W.3d 638, 642 (Tex. 2010) (quoting Smith v. Patrick W.Y.
Tam Trust, 296 S.W.3d 545,
547 (Tex. 2009), which in turn quotes Ragsdale v. Progressive Voters League,
801 S.W.2d 880, 882 (Tex. 1990)) (internal quotation marks omitted). Thus,
where the issue is raised by the evidence, it is within the province of the
jury to determine the reasonable value of an attorney’s services. See Crounse, --- S.W. 3d at ---, 2010 WL
5186822, at *3 (citing Ragsdale,
801 S.W.2d at 881–82); Great Am. Reserve Ins. Co. v. Britton, 406 S.W.2d 901, 907 (Tex. 1966); Tesoro
Petroleum Corp. v. Coastal Ref. & Mktg., Inc., 754 S.W.2d 764, 767 (Tex. App.—Houston [1st Dist.] 1988, writ
denied)); Gunter v. Bailey, 808
S.W.2d 163, 166 (Tex. App.—El Paso 1991, no writ). Expert testimony regarding attorney’s
fees is not conclusive and the trier of fact is not bound by such testimony. Gunter, 808 S.W.2d at 166; Matthiessen v. Schaefer, 897 S.W.2d 825,
826 (Tex. App.—San Antonio 1994), rev’d
on other grounds, 915 S.W.2d 479 (Tex. 1995). The trier of fact can
consider the amount in controversy, the time and effort required, and the
expertise of counsel in arriving at a reasonable amount of attorney’s fees. Gunter, 808 S.W.2d at 166; Matthiessen, 897 S.W.2d at 826. 

1.       Attorney’s
Fees for Preparation and Trial

Here, HP’s bills and attorney testimony establish the amount
HP paid its attorneys but do not conclusively establish that this amount was
reasonable and necessary. See Garcia, 319 S.W.3d at 642 (rejecting
plaintiff’s argument that his attorney’s testimony concerning reasonable attorney’s
fees conclusively established amount of fees and holding that such testimony
was some, but not conclusive, evidence of a reasonable fee). It is within the
jury’s discretion to determine that the reasonable value of the attorneys’
services employed by HP was less than the amount billed by the attorneys. See id. Likewise, because the jury
awarded HP less than the full damages it requested, the jury may have determined
that this outcome warranted a lesser fee than that requested by HP. See Smith, 296 S.W. 3d at 548–49
(holding that court of appeals erred by rendering judgment for full amount of attorney’s
fees sought after reversing $0 fee award because jury awarded less in damages
than amount sought and therefore uncontroverted attorney testimony on amount of
attorney’s fees did not establish amount of reasonable and necessary fees as a
matter of law); see also Gunter, 808
S.W.2d at 166; Matthiessen, 897 S.W.2d
at 826. There was also evidence before the jury from which the jury reasonably
could have concluded that the attorney’s fees sought by HP should be reduced to
preclude double recovery of the same costs as both attorney’s fees and court
costs.[8]
HP thus did not establish the amount of its reasonable and necessary attorney’s
fees as a matter of law and is not entitled to rendition in that amount. See Smith, 296 S.W. 3d at 548. 

Because we have meaningfully reduced the amount of HP’s
damages on appeal, we must reverse the attorney’s fees award and remand for a determination
of attorney’s fees. See Barker v. Eckman,
213 S.W.3d 306, 314 (Tex. 2006) (holding that appellate court should reverse
and remand issue of attorney’s fees where damages are reduced on appeal in a
manner that could affect the determination of reasonable and necessary attorney’s
fees); Young v. Qualls, 223 S.W.3d 312, 314–15 (Tex. 2007)
(same).

          2.       Attorney’s
fees for Appeal

For the same reasons, we conclude that HP has not
established that the amount of such reasonable and necessary attorney’s fees on
appeal is $50,000 as a matter of law. Because the jury determined that the
amount HP was entitled to recover on its claims was less than that calculated
by HP, the jury could also reasonably have determined that the value assigned
by HP’s counsel to its services, at trial and on appeal, was too high in light
of the results obtained. See Smith,
296 S.W. 3d at 548. However, while the jury is free to determine that a lesser
fee is reasonable, it is not free to determine that no fee should be awarded
where there is evidence showing that some amount of attorney’s fees were
reasonable and necessary and no evidence showing that the services rendered had
no value. Smith, 296 S.W. 3d at 548
(“Although it could have rationally concluded that, in light of the amount
involved and the results obtained, a reasonable fee award was less than the
full amount sought, no evidence supported the jury’s refusal to award any
attorney’s fees[.]”); Midland W. Bldg.
LLC v. First Serv. Air Conditioning Contractors, Inc., 300 S.W.3d 738, 739
(Tex. 2009) (“While the jury could have rationally concluded that a reasonable
and necessary fee was less than the amount sought, an award of no fees was
improper in the absence of evidence affirmatively showing that no attorney’s
services were needed or that any services provided were of no value.”). 

Because HP did not prove the amount of its attorney’s fees on
appeal as a matter of law, but the jury’s award of no attorney’s fees for
appeal is not supported by legally sufficient evidence, we remand the issue of
HP’s appellate attorney’s fees for new trial.[9]
See Smith, 296 S.W. 3d at 548–49
(reversing and remanding  for new trial
on attorney’s fees where party failed to establish amount of attorney’s fees as
a matter of law but jury award of $0 was not supported by legally sufficient
evidence); Midland W. Bldg. LLC, 300
S.W. 3d at 739 (same).




 

Conclusion

We reverse the trial court’s judgment with respect to the award of
damages pursuant to the jury findings on damage elements (d) and (e) and reform
the judgment to award damages in the amount of $697,995.20 (the previous award
of $876,810.61 minus $105,097.26 and $73,718.15) plus pre- and post-judgment
interest at the rates stated in the judgment. We reverse the trial court’s
judgment with respect to the award of attorney’s fees and remand for new trial
on the amount of HP’s reasonable and necessary attorney’s fees at trial and on
appeal. We affirm the trial court’s judgment in all other respects.

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel consists of Chief Justice Radack and Justices
Alcala and Bland.

 

 











[1]           The “Warranty” provisions of the contract
provide: 

IN NO EVENT WILL
EITHER PARTY BE RESPONSIBLE TO THE OTHER FOR ANY INCIDENTAL OR CONSEQUENTIAL
DAMAGES ARISING OUT OF THIS WARRANTY. . . .

The
“Indemnification and Remedies” provisions of the contract provide: 

NEITHER PARTY SHALL
BE LIABLE FOR ANY CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOST
PROFITS AND UNLIQUIDATED INVENTORY), INDIRECT, SPECIAL OR PUNITIVE DAMAGES EVEN
IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES . . . .





[2]           In
McKinney, the
Fourteenth Court of Appeals held that extra
expenses incurred under a construction contract were direct damages because
they were contemplated in a contract provision that required the defendant to
reimburse the plaintiff for damage occurring during work on project that were
caused by negligence or fault of defendant or its agents. McKinney & Moore, Inc. v. City of Longview, No. 14–08–006280CV,
2009 WL 4577348, at *5–6 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, pet.
denied).





[3]           Pursuant
to its warranty, Powell promises in the contract to “pay for damages to other
work” resulting from a breach of its warranty. Additionally, the contract contains provisions specifically
identifying for which costs HP will reimburse Powell and for which costs it
will not. Under these provisions HP must reimburse Powell for:

h.         Fees for laboratory testing required by
the Contract Documents, (if applicable), except those related to defective or
nonconforming Work.

. . .

k.         Costs of repairing or correcting work
damaged or non-conforming Work executed by [Powell], Subcontractors or
Suppliers, provided such damage or non-conforming Work was not caused by the
negligence or failure to fulfill a specific responsibility of [Powell.]

HP will not reimburse Powell for:

f.          Costs due to the negligence or failure
to fulfill specific responsibility of [Powell], Subcontractors and suppliers or
anyone directly or indirectly employed by any of them or for whose acts any of
them may be liable.





[4]
          We
note that Texas law
distinguishes between consequential damages at common law and consequential
damages under the UCC, which governs contracts for the sale of goods. Wolf Hollow I, L.P. v. El Paso Mktg., L.P., 329 S.W.3d 628, 637–38 (Tex.
App.—Houston [14th Dist.] 2010, no pet.); Wade
& Sons, Inc. v. Am. Standard, Inc., 127 S.W.3d 814, 823–24 (Tex.
App.—San Antonio 2003, pet. denied).





[5]
          As discussed below, we reverse
and remand the jury’s award of attorney’s fees on other grounds.





[6]           Question
1 asked, “Did Powell fail to comply with the Contract?”  The jury answered, “Yes.”  Question 2 asked, “Did Powell fail to comply
with an express warranty?”  The jury
answered, “Yes.”





[7]           The
fifteen percent reduction does not apply to the jury award for attorney’s fees
on appeal, which was $0.





[8]
          This
case is distinguishable from Ragsdale v.
Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam),
relied on by HP, because there are circumstances tending to support a lesser
attorneys’ fee award. As the Ragsdale court
acknowledged, even where the evidence of attorney’s fees incurred is
uncontradicted, the trier of fact may find some of the claimed fees to be
unreasonable or unnecessary. Ragsdale,
801 S.W.2d at 882.





[9]           HP
requested only that the Court reverse and render in its appellant’s brief, but
requested remand on the limited issue of attorney’s fees in its reply brief. At
trial, HP preserved its right to request remand through a motion for new trial
on this issue. Under these circumstances, we conclude that Rule 43.3 authorizes
this Court to remand the issue of appellate attorney’s fees for new trial. Tex. R. App. P. 43.3 (“When reversing a
trial court judgment, the court must render the judgment that the trial court
should have rendered, except when: (a) a remand is necessary for further
proceedings or (b) the interests of justice require a remand for another
trial.”); see also Majeed v. Hussain, No. 03-08-00679-CV, 2010 WL 4137472
(Tex. App.—Austin Oct. 22, 2010) (mem. op.) reconsideration en banc denied,
No. 03-08-00679-CV, 2010 WL 5575954 (Tex. App.—Austin Dec. 22, 2010, no pet.); Jay
Petroleum, L.L.C. v. EOG Res., Inc., No. 01-08-00541-CV, 2009 WL 1270251
(Tex. App.—Houston [1st Dist.] May 7, 2009, pet. denied).